# EXHIBIT A

**NELSON W. GOODELL, ESQ., SBN 264734**
The Goodell Law Firm
1750 Montgomery Street, Suite 139
San Francisco, CA 94111
(415) 954-7151 (office)
(415) 954-7150 (fax)

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| NICK MAKREAS, | Case No. 3:11-cv-02234-JSW |
| Plaintiff, | **FIRST AMENDED VERIFIED COMPLAINT FOR** |
| v. | 1) **Breach of Fiduciary Duty** |
| FIRST NATIONAL BANK OF NORTHERN CALIFORNIA; T.D. SERVICE COMPANY; KATHY CASTOR; RANDY BRUGIONI; and DOES 1-25; | 2) **Wrongful Foreclosure**<br>3) **Forcible Entry and Detainer**<br>4) **Trespass**<br>5) **Wrongful Eviction**<br>6) **Conversion** |
| Defendants. | 7) **Violation of 42 U.S.C. § 1983**<br>8) **Violation of Fair Debt Collection Practices Act,**<br>9) **Quiet Title**<br>10) **Violation of California Business and Professions Code § 17200** |
| | **JURY TRIAL DEMANDED** |

Plaintiff, NICK MAKREAS ("Plaintiff"), on information and belief alleges as follows:

## INTRODUCTION

1. The plaintiff brings this action based, in part, on Defendants' unlawful exercise of control over Plaintiff's attempt to sell the investment property he built, in which he invested in over $900,000 of his own money. The defendants, FIRST NATIONAL BANK OF NORTHERN CALIFORNIA ("FIRST NATIONAL") and RANDY BRUGIONI, a

Senior Vice President of FIRST NATIONAL, exerted an improper level of control over the plaintiff's efforts to sell the home, including requiring the plaintiff to obtain FIRST NATIONAL'S and BRUGIONI'S approval of the real estate agent to sell the house and setting the sale price. Further, BRUGIONI improperly discussed the plaintiff's private financial affairs with the real estate agent employed to sell the plaintiff's home. The result of FIRST NATIONAL'S interference was the plaintiff losing his home to foreclosure.

2. The subject property is a single-family residence, which was previously owned by plaintiff Nick Makreas, which is located at 285 Sylvan Way, Emerald Hills, CA 94062 (the "Property"), more particularly described as:

All that certain real property situated in the County of San Mateo, State of California described as follows:

Lot 17, Bock 205, as delineated upon that certain Map entitled 'Fairways of Emerald Lake Subdivision 2'; filed for record in the Office of the Recorder of the County of San Mateo, State of California, on September 24th, 1925 in Book 12 of Maps. at Pages 59 to 61, inclusive.

APN: 057-082-020

3. The plaintiff was the sole owner of the property until it was unlawfully foreclosed on May 10, 2010.

4. The plaintiff was in actual, peaceable possession at the time of the foreclosure sale. Subsequent to the foreclosure, the plaintiff was wrongfully evicted by FIRST NATIONAL and dispossessed from his home. Nearly $5,000 of personal property was wrongfully taken from the plaintiff, and never returned. All of this occurred despite the fact that the plaintiff informed FIRST NATIONAL immediately after the foreclosure that he resided at the property, and that he was not abandoned.

## JURISDICTIONAL ALLEGATIONS

5.     The Plaintiff is, and was at all times material to this Complaint, a resident of San Mateo County, California.

6.     Defendant, FIRST NATIONAL BANK OF NORTHERN CALIFORNIA ("First National"), at all relevant times herein was purportedly doing business in the State of California as a bank and lender of secured loans.

7.     Defendant, TD SERVICE COMPANY ("TD SERVICE COMPANY"), at all relevant times herein, was purportedly doing business in the State of California as a trustee and conductor of non-judicial foreclosure sales.

8.     Defendant KATHY CASTOR (hereinafter "CASTOR" or "FIRST NATIONAL Employee") is Vice-President of FIRST NATIONAL, located at 975 El Camino Real, 3rd Floor, South San Francisco, CA 94080, and is a resident of Pacifica, CA.

9.     Defendant RANDY BRUGIONI (hereinafter "BRUGIONI" or "FIRST NATIONAL Employee") is Senior Vice-President of FIRST NATIONAL, located at 975 El Camino Real, 3rd Floor, South San Francisco, CA 94080, and is a resident of San Francisco, CA.

10.     The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants DOES 1 through 20, inclusive, and each of them, are unknown to Plaintiff at this time, and Plaintiffs therefore sue said Defendants by such fictitious names.  Plaintiff allege, on information and belief, that each Doe defendant is responsible for the actions herein alleged. Plaintiff will seek leave of Court to amend this complaint when the names of said Doe defendants have been ascertained.

12.     At all times mentioned herein, whenever an act or omission of a business entity is alleged, said allegation shall be deemed to mean and include an allegation that the business entity acted or omitted to act through its authorized officers, directors, agents, servants, and/or employees, acting within the course and scope of their duties, that the act or omission was authorized and/or ratified by the business entity.

- 3 -

13.     Plaintiff is informed and believe and thereon allege that, at all mentioned times herein, Defendants were agents, servants, employees, alter egos, superiors, successors in interest, joint venturers and/or co-conspirators of each other and in doing the things herein after mentioned, or acting within the course and scope of their authority of such agents, servants, employees, alter egos, superior, successors in interest, joint venturers and/or co-conspirators with the permission and consent of their co-defendants and, consequently, each Defendant named herein is jointly and severally liable to Plaintiff for the damages and harm sustained as a result of their wrongful conduct.

## STATEMENT OF FACTS

14.     The plaintiff purchased the land upon which the subject property sits in 2000.

15.     The property was vacant until 2006.  In 2006, the plaintiff began construction on the property.

16.     In order to begin construction on the property, the plaintiff spent his life savings of $500,000 and incurred approximately $310,000 in credit card debt to partially finance the construction of the property.

17.     In 2007, the plaintiff was referred to FIRST NATIONAL by a business associate who informed him that FIRST NATIONAL offered construction loans.

18.     After speaking with representatives of FIRST NATIONAL, the plaintiff was informed that he would have to pay off the entirety of his credit card debt (approximately $310,000) as part of obtaining this loan.

19.     Ultimately, in July 2007, the plaintiff and FIRST NATIONAL entered into an agreement wherein FIRST NATIONAL loaned $1.1 million, with approximately $310,000 paying off the plaintiff's credit card debt.  FIRST NATIONAL informed the plaintiff that they were charging him an additional "point" in selling him this loan, because the project had already begun.

20. Against the plaintiff's wishes, nearly $310,000 of the $1.1 million he borrowed was not spent towards constructing this project.

21. The agreement provide for a one-year term, wherein the total amount of the loan would become due at that time. However, FIRST NATIONAL's representatives informed the plaintiff that they would extend the terms of the loan until the project is completed.

22. In July 2008, the plaintiff and FIRST NATIONAL entered into an agreement to extend the loan for six months, until February 2009, on the basis of plaintiff paying six months of interest, approximately $40,000.

23. In February 2009, construction on the house was completed. The plaintiff began showing the house himself, and conducted open houses wherein 1-7 people per week visited the house.

24. Also in February 2009, the plaintiff and FIRST NATIONAL entered into an additional agreement wherein the loan agreement would be extended an additional six months. As consideration for this extension, the plaintiff paid an additional six months of interest.

25. In July 2009, the plaintiff and FIRST NATIONAL entered into another extension of the loan.

26. In the summer of 2009, BRUGIONI threatened the plaintiff with immediate foreclosure unless he agreed to the condition that the plaintiff would let him and FIRST NATIONAL approve of the real estate agent to sell the property. BRUGIONI further demanded that the plaintiff let FIRST NATIONAL and BRUGIONI approve of the sale price of the property.

27. The plaintiff met with the approved real estate agent, who stated that, in her decades of experience, she had never been required to seek approval from a lender in order to obtain an approval on a listing price. The real estate agent initially said that a conservative appraisal for this property is $1,630,000. The real estate agent also recommended setting the listing price at $1,599,000.

28.     Within 12 hours of this meeting, this real estate agent contacted the plaintiff and stated that she wanted to reduce the price to $1,400,000 because defendant BRUGONI would prefer this price.

29.     The plaintiff did not agree to this reduction, but reluctantly did agree to a price reduction to $1,489,000.

30.     The real estate agent also repeatedly told the plaintiff that they needed to keep BRUGONI happy. The real estate agent also told the plaintiff that she wanted to be hired by FIRST NATIONAL to sell their REO's in the future. On information and belief, the plaintiff alleges that BRUGONI and FIRST NATIONAL'S interest was improperly placed ahead of the plaintiff.

31.     The plaintiff further alleges that FIRST NATIONAL and BRUGIONI exerted an improper level of dominion and control over the plaintiff's attempts to sell the property, which rendered them a fiduciary to plaintiff.

32.     The real estate agent and BRUGIONI improperly spoke frequently about plaintiff's financial and private affairs.

33.     The plaintiff's home was never sold by the approved real estate agent of BRUGIONI and FIRST NATIONAL. On information and belief, the plaintiff alleges that the drop in the price and the interference required by FIRST NATIONAL and BRUGIONI caused the home not to be sold.

34.     FIRST NATIONAL communicated with the Plaintiff by mail and by telephone to collect on this loan.

35. On December 6, 2009, as per Title 15 U.S.C., Subchapter V, et seq., Plaintiff disputed a debt alleged by FIRST NATIONAL to be owed to them.

36. Plaintiff sent this letter of dispute requesting verification of the debt to FIRST NATIONAL via the U.S. Postal Service Registered Mail No. RR 520 103 229 US, return receipt

1   requested. This "Dispute Letter" was received by FIRST NATIONAL on December 9,

2   2009.

3   37. No validation of the alleged debt was given to Plaintiff in violation of 15 U.S.C.

4   Subchapter V § 1692g, Validation of Debts and collection activity continued in violation of

5   the FDCPA and the Rosenthal Act.

6   38. On December 16, 2009, as per Title 15 U.S.C., Subchapter V, et seq., a second attempt to

7   verify the debt was sent to FIRST NATIONAL as an "Opportunity to Cure", again asking

8   FIRST NATIONAL to provide Plaintiff with a validation of the alleged debt. This "Dispute

9   Letter" for "Opportunity to Cure" to FIRST NATIONAL was sent via the U.S. Postal

10   Service Certified Mail No. 7009 1680 0000 2417 9253, return receipt requested. This

11   "Dispute Letter" was received by FIRST NATIONAL on December 18, 2009.

12   39. FIRST NATIONAL again continued collection activity in violation of the FDCPA 15

13   U.S.C. Subchapter V § 1692g, Validation of Debts and the Rosenthal Act.

14   40. On February 22, 2010, in a final attempt to have FIRST NATIONAL validate the alleged

15   debt, a California Notary, Jan Schieberl sent FIRST NATIONAL a "Qualified Written

16   Request", via the U.S. Postal Service Certified Mail No. 7009 2820 0003 9963 8990, return

17   receipt requested. This "Qualified Written Request" was received by FIRST NATIONAL

18   on February 24, 2010.

19   41. FIRST NATIONAL was asked in the "Qualified Written Request" to validate the amount

20   of the debt but did not respond with validation of any alleged account as required under the

21   FDCPA 15 U.S.C. Subchapter V § 1692g, Validation of Debts. The Notary, Jan Schieberl,

22   has given Plaintiff an "AFFIDAVIT OF NON RESPONSE", dated April 30, 2010,

23   certifying that FIRST NATIONAL did not respond with validation of any account.

24   42. FIRST NATIONAL again continued collection activity in violation of the FDCPA 15

25   U.S.C. Subchapter V § 1692g, Validation of Debts.

26   43. On February 22, 2010, a California Notary, Jan Schieberl, sent TD Service, the debt

27   collector, a "Qualified Written Request", via the U.S. Postal Service Certified Mail No.

28

1    7009 2820 0003 9963 8983, return receipt requested. This "Qualified Written Request" was

2    received by TDSC on February 25, 2010.

3    44. TDSC was asked in the "Qualified Written Request" to validate the alleged debt but did not

4    respond with validation of any alleged account as required under the FDCPA 15 U.S.C.

5    Subchapter V § 1692g, Validation of Debts. The Notary, Jan Schieberl, has given Plaintiff

6    an "AFFIDAVIT OF NON RESPONSE", dated April 30, 2010, certifying that TDSC did

7    not respond with validation of any account.

8    45.    In January 8, 2010, a Notice of Default was recorded by TD Service Company with the

9    San Mateo County Recorder's Office.  However, it was never mailed to the plaintiff, a direct

10   violation of California Civil Code section 2924.

11   46.    Furthermore, at the time that the Notice of Default was recorded, TD Service Company

12   was not legally authorized to do, as no Substitution of Trustee had been recorded.  Rather, the

13   original trustee, LandAmerica Commonwealth, was still the legal trustee at this time.   TD

14   Service Company recorded a Substitution of Trustee on February 9, 2010.  However, this

15   
16   Substitution of Trustee was improperly backdated, with a purported effective date of January 5,

17   2010. The plaintiff, on information and belief, alleges that this document was not actually signed

18   or notarized until February 2010 and that, therefore, this Substitution of Trustee is invalid.

19   Consequently, TD Service Company had no right to sell the plaintiff's property and the

20   foreclosure sale is invalid.

21   47.    The plaintiff only learned of the Notice of Default when he went to the San Mateo

22   County Recorder's Office on January 2010 to see if any legal documents had been filed

23   
24   pertaining to his property.

25   48.    On April 19, 2010, TD Service Company recorded a Notice of Trustee's Sale with the

26   San Mateo County Recorder's Office.  However, this Notice was never posted on the property, a

27   direct violation of California Civil Code section 2924f.

28

49.     The plaintiff did not know the sale date of his home until shortly before the sale took place.

50.     If the plaintiff had been given the statutory notice for the sale, he would have obtained a "hard money" loan to pay off First National and avoid foreclosure.

51.     On May 10, 2011, TD Service, at the behest of First National, conducted a foreclosure sale and title reverted to First National.

52.     Two days later on Wednesday, May 12, 2010, Plaintiff found a note duct-taped on the door at the subject property advising anyone living there to contact CASTOR, who is Vice President of FIRST NATIONAL, at a specified phone number.

53. Plaintiff was in actual, peaceable Possession of subject property, as defined in Cal. Code. Civ.Procedure § 1160(2), with power, water, and sewer in place. The plaintiff also had a significant amount of personal property located at the subject property.  All utilities were operational and fully paid.

54. Plaintiff was in actual, peaceable possession of subject property, as defined in Cal. Code Civ. Procedure § 1160(2), with full window coverings, alarm was set, heat was on, and Plaintiff had just left his home.

55. FIRST NATIONAL'S attorney, Friedemann Goldberg, in a letter to Plaintiff dated April 13, 2010, acknowledged Plaintiff's home address as the subject home address of 285 Sylvan Way, Emerald Hills, CA 94065, in paragraph number 4 in that "On December 5, 2009, FNBNC received notice that you changed your home address to the property address as indicated in your correspondence…".

56. After Plaintiff left his home on Wednesday, May 12, 2010, Plaintiff called CASTOR, leaving her a voice mail at approximately 4:22 pm, informing her that Plaintiff had found her note, that Plaintiff was living at the home, and if the door is opened the alarm will ring.

57. Plaintiff did not receive a call back from Defendant CASTOR.

59.     Within the next half-hour, the plaintiff alleges that his property was broken into by agents of FIRST NATIONAL.

60.   Such an entry was unlawful, and the subsequent dispossession of Plaintiff from the property wrongfully deprived the plaintiff of his right to challenge the validity of the non-judicial foreclosure proceedings through an unlawful detainer trial.

61.   On this same day, Wednesday, May 12, 2010, at approximately 6:47 pm, primary officer DEPUTY VALENCIA dispatched a San Bruno police officer to 271 Tulare Drive, San Bruno, CA, to inform Plaintiff of the alarm going off at his home at 285 Sylvan Way in San Mateo County and Plaintiff was advised to contact the SHERIFF"S OFFICE by phone.

62.   Plaintiff did as advised, and was told by a SHERIFF'S OFFICE on the telephone that Plaintiff's alarm had gone off at subject property with DEPUTIES having been dispatched to the subject home. Upon questioning SHERIFF'S OFFICE about the condition of the home, Plaintiff was informed the house doors and windows were secure and that it was the previous shift of DEPUTIES which had handled the alarm call.

63.   Plaintiff returned to his home this same day, Wednesday May 12, 2010, at approximately 7:30 pm and the alarm was <u>not</u> ringing and Plaintiff was <u>unable</u> to enter his home because <u>the locks had been changed</u>.  Thus, plaintiff was wrongfully dispossessed from his home, despite the fact that he had informed defendant CASTOR and defendant FIRST NATIONAL that he resided in the property and it was not vacant.   Indeed, the plaintiff had a significant amount of personal property at this home.

64. On this day that the locks had been changed, there was no deed conveying title to FIRST NATIONAL recorded in the San Mateo County Recorder's Office.   Thus, FIRST NATIONAL had not even perfected title at the time they wrongfully dispossessed the plaintiff from the property.

65. On Friday, May 14, 2010, Plaintiff, by phone, spoke to a woman at the SHERIFF'S OFFICE dispatch, and Plaintiff demanded to be allowed to regain entrance to his home and change the locks back.

66.   The woman agreed to dispatch DEPUTIES once Plaintiff arrived at subject property and called dispatch from there. Upon arriving outside his home, Plaintiff called dispatch and asked for a DEPUTY to be sent out. Plaintiff was informed by a different woman,

1  that this is a "foreclosure" and a person named "Duke" from FIRST NATIONAL had called
2  that day and notified dispatch that he (meaning Duke) would be changing the locks and doing
3  alarm work. However, this female employee did send DEPUTIES to Plaintiff's home.

4      67.     Plaintiff alleges that "Duke" was a contractor/employee of FIRST NATIONAL.
5  DEPUTY DUVALL and DEPUTY HOSS, San Mateo County Sheriff Deputies, arrived at
6  plaintiff's home.   The plaintiff told the deputies that he wished to take possession back to his
7  home, since it was taken without right and without a Court order.   However, the Deputies
8  informed him that this was a civil matter and they could not force FIRST NATIONAL to give
9  plaintiff back his home.  The Plaintiff told the Deputies that he had personal property in his
10  home, and wanted to let be back in.  The plaintiff also told the Deputies that he wished to
11  change the locks back because FIRST NATIONAL had no right to possession, because there
12  was no court order awarding them possession of the premises and the plaintiff had not
13  voluntarily abandoned possession either.

14      68.     The Deputies told the plaintiff that they would not let him re-change the locks,
15  and that he could not re-enter the premises.  Thus, FIRST NATIONAL, under color of law,
16  wrongfully dispossessed the plaintiff from his property.

17      69.     As a result of the plaintiff being deprived of possession of the property, he was
18  also deprived of his right to challenge the validity of the non-judicial foreclosure sale through
19  an unlawful detainer action.

20      70.     Such a deprival of his right to challenge the validity of the non-judicial
21  foreclosure sale, which necessarily corresponded with his possessory rights, violated the
22  plaintiff's rights under the Fourteenth Amendment of the United States Constitution.  The
23  plaintiff's Fourteenth Amendment rights were violated when First National, with police
24  assistance, used self-help to dispossess the plaintiff without providing proper notice and a prior
25  judicial hearing.

26      71.     If the plaintiff had not been wrongfully dispossessed, the plaintiff could have
27  challenged the validity of the non-judicial foreclosure sale through defending an unlawful
28  detainer action for possession of the property, which was invalid due to the fact that TD

1   SERVICE COMPANY was not authorized to issue the Notice of Default on January 8, 2010 at

2   the time the Notice was issued. This is so because LandAmerica Commonwealth was still the

3   trustee of record at that time. Thus, the foreclosure sale was invalid.

4       72.   The Sheriff's involvement was significant, because the Sheriff Deputies, at the

5   behest of FIRST NATIONAL, informed the plaintiff that FIRST NATIONAL now held title to

6   the property following the foreclosure, and that the plaintiff may not re-take possession of his

7   home. FIRST NATIONAL had called the San Mateo County Sheriff's Office on Friday, May

8   12, 2010 to inform them that they would be changing locks and otherwise taking possession of

9   the property. As a result, when the plaintiff arrived at the property and asked for the Deputies'

10  assistance, the Deputies told plaintiff that he may not re-change the locks and otherwise regain

11  possession of the property.

12      73.   Due to the Deputies' statements, the Plaintiff did not attempt to regain

13  possession of the property, as the plaintiff believed that it would be unlawful for him to do so.

14      74.   Under California law, when a property is not abandoned, it is necessary for a

15  party to obtain a court order through an unlawful detainer lawsuit in order to have a valid

16  possessory right for a piece of real property.

17      75.   The plaintiff contacted defendants CASTOR and FIRST NATIONAL and

18  informed them that he was residing in the property, and that it was not abandoned.

19  Nonetheless, CASTOR and FIRST NATIONAL chose to wrongfully deprive plaintiff of

20  possession of the property and never returned his belongings to plaintiff.

21      76.   FIRST NATIONAL has never returned the plaintiff's personal property, which

22  was valued at approximately $5,000.

23      77.   The damages to the Plaintiff are the loss of his home worth approximately over

24  $1.5 million, the loss of his personal property, the substantial emotional anguish caused by the

25  wrongful foreclosure and eviction of himself from his home. This wrongful foreclosure has

26  also damaged Plaintiff's credit, and will make it difficult for him to borrow any sum of money

27  in the future.

28

78.    Shortly before the foreclosure sale, the plaintiff commenced an action in San Mateo County Superior Court (San Mateo County Superior Court Case No. CIV494823) which was initially litigated by himself *pro se*, against FIRST NATIONAL and other defendants regarding the illegality of the foreclosure sale.  Being unsophisticated in legal affairs, this action was dismissed without prejudice on November 19, 2010, with the intention of bringing the instant action in federal court on the federal causes of action contained herein.

79.    After the case was dismissed, FIRST NATIONAL attempted to recover attorney's fees for defending that case, and said attempt was denied on April 1, 2011.

80.    Shortly after this case was dismissed, FIRST NATIONAL brought a quiet title action against the plaintiff, also in San Mateo County Superior Court.

81.    Prior to bringing that action, transferred subject home to their wholly owned company organized and existing under the laws of the State of California, named 531-535 Oak, LLC, on or about June 3, 2010.

82.    531-535 Oak, LLC, sold Plaintiff's subject home on or about February 24, 2011, for approximately $1,234,000.00 to Daren M. Okada and Samantha A. Annuzzi 2009 Revocable Trust. Samantha A. Annuzzi, having been the previous listing agent for Defendant FIRST NATIONAL after foreclosure of subject property.

83.    Despite the fact that FIRST NATIONAL no longer owned the subject property, FIRST NATIONAL filed a "quiet title" lawsuit in San Mateo County Superior Court (Case No. CIV503782) against the plaintiff on March 8, 2011.  The plaintiff filed a demurrer to FIRST NATIONAL'S complaint on the basis that they lacked standing to bring the action, because they no longer owned the property, and FIRST NATIONAL voluntarily dismissed that action, without prejudice, on June 30, 2011.

## FIRST CAUSE OF ACTION

### BREACH OF FIDUCIARY DUTY

**(Against First National and Randy Brugoni)**

1. Plaintiff realleges and incorporates by reference the allegations in all paragraphs above as though fully set forth herein.

2. Defendants FIRST NATIONAL and RANDY BRUGIONI went above and beyond the normal scope of a lender in their interactions with the plaintiff.

3. Specifically, FIRST NATIONAL and RANDY BRUGIONI made it a condition of an extension to their loan agreement that plaintiff employ a real estate agent acceptable to them.

4. Further, FIRST NATIONAL and RANDY BRUGONI improperly told the plaintiff the sale price that he must list his home at.

5. FIRST NATIONAL and BRUGONI also improperly discussed the plaintiff's financial affairs with the real estate agent they approved of.

6. Despite the fact that FIRST NATIONAL and BRUGONI sought to dictate the plaintiff's attempts to sell his home, the real estate agent was unable to sell plaintiff's home.

7. By exercising dominion and control over the plaintiff, FIRST NATIONAL owed the plaintiff fiduciary duties.

8. The sale price urged upon the plaintiff by FIRST NATIONAL was approximately $1.4 million. However, the property's fair market value was closer to $1,630,000, and had been appraised at that amount.

9. In fact, before FIRST NATIONAL'S interference, the real estate agent employed to sell the house, originally listed the home for sale at $1,599,000. However, within 12 hours of listing the property for this price, the real estate agent called the plaintiff back and informed him that BRUGIONI wanted the property listed for $1.4 million. However, the plaintiff refused to reduce the price to this level for this time.

10. Nonetheless, the real estate agent persisted, and the plaintiff agreed to reduce the price to $1,489,000.

11.     The plaintiff alleges that he would have been able to sell the home had it not been for FIRST NATIONAL and BRUGIONI'S interference.

12.     The breach of the fiduciary duties that FIRST NATIONAL and BRUGIONI owed the plaintiff caused him to lose his home, and his life savings.

### SECOND CAUSE OF ACTION

### WRONGFUL FORECLOSURE

### (Against First National and TD Service Company)

1.      Plaintiff realleges and incorporates by reference the allegations in all paragraphs above as though fully set forth herein.

2.      Plaintiff asserts that California is a non-judicial foreclosure state which requires Defendants to follow the statutory rights to foreclose.  Specifically, Civil Code Sections 2924 and 2934, collectively, provide that the power of sale is vested in the trustee who is given the authority to sell the property.  Only a properly-appointed trustee can initiate the non-judicial foreclosure process.

3.      The plaintiff, on information and belief, alleges that TD Service Company backdated the Substitution of Trustee, which was recorded on February 9, 2010, but dated to be effective January 5, 2010.  The Substitution of Trustee has the date typed in, rather than being hand-written.  Since TD Service Company was not the proper trustee at the time the Notice of Default was recorded, the Notice of Default was invalid.

4.      The plaintiff never received a copy of the Notice of Default in the mail, despite the fact that California Civil Code section 2924 strictly requires that a trustor be mailed a copy of a Notice of Default.

5.      In addition, TD Service Company never posted a copy of the Notice of Trustee's Sale on the plaintiff's property, a direct violation of California Civil Code section 2924f.  Moreover, the Notice of Trustee's Sale was not recorded until April 19, 2010, which was eighteen days prior to

1  the sale.   However, Civil Code section 2924f required that the Notice of Trustee's Sale be

2  recorded at least twenty days before the sale.

3  6.       Since the statutory requirements were not complied with in this case, the foreclosure sale

4  is invalid.

5

6  7.       Since the foreclosure sale was invalid, the plaintiff retains legal title to the property.

7  Thus, the plaintiff prays that the foreclosure sale be set aside.

8  **THIRD CAUSE OF ACTION**

9  **FORCIBLE ENTRY AND DETAINER**

10  **(Against FIRST NATIONAL and KATHY CASTOR)**

11  1.       Plaintiff realleges and incorporates by reference the allegations in all paragraphs above as

12  though fully set forth herein.

13  2.       On May 12, 2010, the Plaintiff received a note on the door of his home asking for

14  anyone living there to contact CASTOR if he still occupied the premises.  The Plaintiff promptly

15  called Ms. Castor, and left a voicemail message, informing her that he still occupied the property

16

17  and that if anyone opened the door that the alarm would go off.

18  3.       Nonetheless, agents of FIRST NATIONAL broke into plaintiff's home, disarmed his

19  alarm, and changed his locks.

20  4.       The Plaintiff had approximately $5,000 in personal property in this property, including

21  household furnishings, cleaning supplies, sheet rock, lights, gardening supplies, and other

22  various items.

23  5.       The Plaintiff was never given possession back to the property, and he was never given

24  back his personal property.

25

26  6.       This wrongful dispossession of plaintiff from the property further harmed the plaintiff by

27  preventing him from being able to challenge the validity of the non-judicial foreclosure sale

28  through an unlawful detainer trial.  Under California law, a foreclosing beneficiary must prove

strict compliance with California Civil Code section 2924 in order to obtain possession of a property that was foreclosed under a private sale in a Deed of Trust.

7.      The plaintiff demanded that FIRST NATIONAL let him regain possession of the property, but his demands were ignored.

7.      The plaintiff alleges, on information and belief, that this act of forcibly entering and detaining his property from him was done maliciously by FIRST NATIONAL in an attempt to prevent plaintiff from exercising his rights to keep possession, and regain title, to his home.

### FOURTH CAUSE OF ACTION

### TRESPASS

### (Against First National)

1.  Plaintiff realleges and incorporates by reference the allegations in all paragraphs above as though fully set forth herein.

2.  FIRST NATIONAL entered the subject premises; converted plaintiff's personal property; changed the locks; and prevented the plaintiff from regaining possession of the property, without any legally permissible authority.

3.  The plaintiff was harmed by enduring substantial emotional anguish, and having his personal property damaged, and by losing his right to adjudicate the possessory rights to the property through an unlawful detainer trial.

4.  At all relevant times herein, plaintiff was in quiet and peaceable possession of the subject premises.

5.  The plaintiff never abandoned the subject property until he was wrongfully displaced by FIRST NATIONAL.

### FIFTH CAUSE OF ACTION

### WRONGFUL EVICTION

**(Against First National)**

1.     Plaintiff realleges and incorporates by reference the allegations in all paragraphs above as though fully set forth herein.

2.     By virtue of being locked out of his home, FIRST NATIONAL wrongfully evicted plaintiff from his home.

3.     Such wrongful eviction was done maliciously, with the intent of preventing plaintiff from being able to challenge through legal processes FIRST NATIONAL'S claim of title, and possession, to the premises.

**SIXTH CAUSE OF ACTION**

**CONVERSION**

**(Against First National)**

1.     Plaintiff realleges and incorporates by reference the allegations in all paragraphs above as though fully set forth herein.

2.     As stated above, the Plaintiff's personal property was never returned to the plaintiff after he was wrongfully dispossessed of his home.

3.     Said personal property was worth approximately $5,000, and FIRST NATIONAL never permitted him to re-enter this home in order to retrieve his belongings.

**SEVENTH CAUSE OF ACTION**

**VIOLATION OF 42 U.S.C. § 1983, ET SEQ.**

**(Against First National)**

1.     Plaintiff re-alleges and incorporates herein by reference each and every allegation contained in all paragraphs as set forth above.

2.     As stated above, FIRST NATIONAL wrongfully deprived the plaintiff of his rights under the Fourteenth Amendment of the United States Constitution by, with police assistance, using self-help to dispossess the plaintiff without providing proper notice and a prior judicial hearing.

3.      FIRST NATIONAL called the San Mateo County Sheriff's Office and informed them that they would be changing the locks, and asked them to keep the plaintiff out of the property.

4.      After the plaintiff arrived at the property on May 14, 2010, the plaintiff called the San Mateo County Sheriff's Office and asked them to come to the property.

5.      After Sheriff's Deputies arrived, they informed the plaintiff that he could not re-change the locks or enter the property because FIRST NATIONAL was now the owner of the property.

6.      By contacting the Sheriff and employing them to achieve their unlawful seizure of the property, FIRST NATIONAL employed significant state action to deprive the plaintiff of his Fourteenth Amendment right to challenge the taking of his possessory rights to the property.

7.      Due to the fact that the Substitution of Trustee was invalid, as well as the fact that the plaintiff never received copies of the Notice of Default and the Notice of Trustee's Sale was never posted on the property, the non-judicial foreclosure sale was invalid.  Thus, if the plaintiff had been able to challenge FIRST NATIONAL'S attempts to gain possession of the property through an unlawful detainer trial, the plaintiff could have prevented FIRST NATIONAL from taking possession of his home.  Furthermore, the plaintiff would not have been needlessly deprived of his personal property.

## EIGHTH CAUSE OF ACTION

## VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692

### (Against TD Service Company and First National)

1.      Plaintiff re-alleges and incorporates by reference the above paragraphs as though set forth fully herein.

2.      By not providing validation of the alleged debt as requested by the Plaintiff's "Letter of Dispute" dated December 6, 2009, and by continuous collection activity prior to validation of the debt, FIRST NATIONAL has violated FDCPA Section 809, Validation of Debts 15 U.S.C. 1692g:

(b) If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector <u>shall cease collection of the debt</u>, or any disputed portion thereof, until the debt collector obtains verification of the debt or any copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of original creditor, is mailed to the consumer by debt collector.

3.    By not providing validation of the alleged debt as requested by the Plaintiff's "Dispute Letter" letter dated December 16, 2009, and by continuous collection activity prior to validation of the debt, FIRST NATIONAL has violated FDCPA Section 809, Validation of Debts 15 U.S.C. 1692g.

4.    By not providing validation of the alleged debt as requested by the Plaintiff's "Qualified Written Request" letter dated February 22, 2010, and by continuous collection activity prior to validation of the debt, FIRST NATIONAL and TDSC have violated FDCPA Section 809, Validation of debts 15 U.S.C. 1692g.

5.    The Defendants FIRST NATIONAL and TDSC have failed to cease collection activity and have failed to validate the alleged debt. The FDCPA forbids the use of false, deceptive or misleading representation in connection with the collection of a debt. Under the FDCPA, a debt collector may not use unfair or unconscionable means to collect or attempt to collect a debt.

## NINTH CAUSE OF ACTION
### QUIET TITLE
### (Against all Defendants)

1.   Plaintiff re-alleges and incorporates herein by reference ach and every allegations contained in all paragraphs as set forth above.

2.   Due to the fact that the foreclosure sale was invalid, the plaintiff still retains legal title to the property.

3.  The plaintiff is seeking to quiet title to the subject property against the claims of the Defendants as follows: Defendants, who claim some right, title, estate, lien, or interest in and to the aforementioned property of Plaintiff, based on the deed referenced in this complaint; the claims of any successor defendants to be ascertained upon proof at trial; the claims of all unknown defendants, whether or not the claim or cloud is known to the plaintiff; and the unknown, uncertain, or contingent claim, if any, of any defendants known or unknown.  Defendants' claims are adverse to Plaintiff's, and without any right whatsoever and those Defendants are without any right, title, estate, lien, or interest whatever in the above-referenced property, or any part of said properties, except as may be ascertained upon proof at trial.

4.  Plaintiff seeks to quiet title in his name as of the date the complaint was filed or such other dates as may be applicable to the property as shall be known upon proof at trial.

## TENTH CAUSE OF ACTION

### (Against All Defendants)

### VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200, ET SEQ.

1.  Plaintiff realleges and incorporates by reference the allegations in all paragraphs above as though fully set forth herein.

2.  Plaintiff brings this action as a private consumer on his own behalf, pursuant to Cal. Business and Professions Code § 17200, et seq. referred to hereinafter as the Unfair Competition Law (or "UCL").

3.  Beginning on the dates indicated and all times material herein, Defendants have committed acts of unfair competition proscribed by the UCL including the practices alleged herein against Plaintiff.

4.      Business and Professions Code (CBPC) prohibits any unfair, unlawful, or fraudulent business practice. "Because Business and Professions Code Section 17200 is written in the disjunctive, it establishes three varies of unfair competition—acts or practices which are unfair, unlawful, or fraudulent." *Schvartz v. Budget Group* (2000) 81 Cal.App.4th 1153, 1159 (quoting *Podolsky v. Healthcare Corp.* (1996) 50 Cal.App.4th 632, 647).

5.      There is a four year of statute of limitations under CBPC 17200, which can be extended based on the "delayed discovery" rule.  Bus. And Prof. Code 17208; *Broberg v. Guardian Life Ins. Co. of America* (2009) 171 Cal.App.4th 912, 920. The "delayed discovery" rule provides that the statute of limitation does not begin to run until the plaintiff "suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her." *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1109.  Thus, a claim brought under California Business and Professions Code Section 17200 may be brought four years after the plaintiff "suspects or should suspect" that his injury was caused by some wrongdoing.

6.      As stated earlier, the "unlawful" prong of CBPC 17200 makes a business practice that violates *any* law independently actionable.  Furthermore, the statute of limitations of the other law is irrelevant, and "[a]ny action on any [Section 17200] cause of action is subject to the four-year statute of limitations created by that section." *Cortez v. Purolator Air Filtration Products* (2000) 23 Cal.4th 163, 178-79.

7.      The "unfairness" prong is "intentionally broad . . . ." Podolsky v. First Healthcare Corp., (1996) 50 Cal.App. 4th 632, 647.  While the scope of the law "is not unlimited . . ., [t]he test of whether a business practice is unfair involves balancing the utility of the defendant's conduct against the gravity of the alleged victim's harm." Schvartz, 81 Cal.App. 3d at 1157 (citing Cal-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., (1999) 20 Cal. 4th 163, 182. Finally, "[a]n unfair business practice occurs when the practice 'offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially

1    injurious to consumers.'" <u>Podolsky</u>, 50 Cal. App. 4th at 647 (quoting <u>People v. Casa Blanca</u>

2    <u>Convalescent Homes, Inc.</u>, (1984) 159 Cal.App.3d 509, 530.

3    8.    "The 'fraud' prong of Business and Professions Code Section 17200 is unlike common

4    law fraud or deception. A violation can be shown even if no one was actually deceived, relied

5    upon the fraudulent practice, or sustained any damage. Instead, it is only necessary to show that

6    members of the public are likely to be deceived." <u>Podolsky</u>, 50 Cal.App.4th at 647-648.

7

8    9.    The instant claim is predicated on the generally applicable duty of any contracting party

9    to not omit material facts, and on the duty to refrain from unlawful, unfair and deceptive business

10    practices. Plaintiff hereby seeks to enforce a general proscription of unfair business practices

11    and the requirement to refrain from deceptive conduct. The instant claim is predicated on duties

12    that govern anyone engaged in any business and anyone contracting with anyone else.

13    10.    The foregoing unlawful, unfair and fraudulent acts by all defendants of not complying

14    with the laws pertaining to California non-judicial foreclosure sales, subsequent evictions of

15    occupants of homes following a foreclosure, and failure to comply with the laws pertaining to

16    debt collection are violations of CBPC section 17200.

17

18    <u>**PRAYER**</u>

19    WHEREFORE, Plaintiff prays judgment as follows:

20    1.    That the Notice of Default recorded on January 8, 2010 be declared invalid;

21    2.    That the foreclosure conducted on May 10, 2010 be declared invalid;

22    3.    For a declaration that Plaintiff is the prevailing party;

23    4.    For actual damages according to proof;

24    5.    For compensatory damages as permitted by law;

25    6.    For consequential damages as permitted by law;

26    7.    For punitive damages as permitted by law;

27

28    8.    For equitable relief, including restitution;

9.  For interest as permitted by law;

10. For Declaratory Relief;

11. For reasonable attorneys' fees and costs;

12. For such other relief as is just and proper.

Dated: November 4, 2011

The Goodell Law Firm

By: _____
NELSON W. GOODELL
Attorney for Plaintiffs

**REQUEST FOR TRIAL BY JURY**

Plaintiff requests that the trial in this case be by jury.

Dated: November 4, 2011

THE GOODELL LAW FIRM

By: _____
NELSON W. GOODELL
Attorney for Plaintiffs

- 24 -

1  NELSON W. GOODELL, ESQ., SBN 264734
   The Goodell Law Firm
2  1750 Montgomery Street, Suite 139
   San Francisco, CA 94111
3  (415) 954-7151 (office)
   (415) 954-7150 (fax)
4
5                   UNITED STATES DISTRICT COURT

6       NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

7                                    )   Case No. 3:11-cv-02234-JSW
   NICK MAKREAS,                     )
8                                    )   **VERIFICATION OF FIRST AMENDED**
   Plaintiff,                        )   **COMPLAINT**
9                                    )
        v.                           )
10                                   )
   FIRST NATIONAL BANK OF NORTHERN   )
11                                   )
   CALIFORNIA; T.D. SERVICE COMPANY; KATHY )
12                                   )
   CASTOR; RANDY BRUGIONI; and DOES 1-25; )
13                                   )
   Defendants.                       )
14                                   )
                                     )
15                                   )
16
17
18        I, NICK MAKREAS, am the plaintiff in the above-entitled action. I have read the

19  foregoing complaint, and know the contents thereof. The same is true to my own knowledge,

20  except as to those matters which are therein alleged on information and belief, and as to those

21  matters, I believe them to be true.

22        I declare under penalty of perjury of the laws of the United States and the State of

23
24  California that the foregoing is true and correct.

25  Date: November 4, 2011

26
                        __/s/ Nick Makreas___
27                        NICK MAKREAS

28

                                                                        -1-