1

2

3

4                        UNITED STATES DISTRICT COURT

5                      NORTHERN DISTRICT OF CALIFORNIA

6

7   NICK MAKREAS,                          Case No.  11-cv-02234-JST

            Plaintiff,

8

        v.                                 **ORDER RE: CROSS-MOTIONS FOR**
9                                          **PARTIAL SUMMARY JUDGMENT**

10  FIRST NATIONAL BANK OF                 Re: ECF Nos. 117, 118, 137
    NORTHERN CALIFORNIA, et al.,

11          Defendants.

12

13          In this action for wrongful foreclosure and related claims, three cross-motions for partial

14  summary judgment are pending.  For the reasons set forth below, the motions are granted in part

15  and denied in part.

16                            **I.       BACKGROUND**

17  **A.     Makreas' Claims**

18          Plaintiff Nick Makreas brings this action against Defendants First National Bank of

19  Northern  California ("FNB"); Kathy Castor, who is Vice President of FNB; Randy Brugioni, who

20  is a Senior Vice President of FNB; and T.D. Service Company ("TD"), for claims arising out of

21  the non-judicial foreclosure of a property located at 285 Sylvan Way, Emerald Hills, California

22  ("the property").

23          On June 12, 2007, Makreas entered into a construction loan with FNB for the construction

24  of a spec home located at the property.  See Castor Decl. ¶¶ 4-6 & Ex. 11-12.  FNB obtained a

25  deed of trust on the property as collateral for the loan, which was recorded on July 5, 2007 ("Deed

26  of Trust").  Castor Decl. ¶ 6; Request for Judicial Notice ("RJN"), Ex. 33.[1]  Makreas failed to

27  ───────────────

28  [1] The Court takes judicial notice of the instruments pertaining to the loan and foreclosure at issue,
    as such documents are referenced in the operative complaint and no party questions their

repay the loan when it matured on December 17, 2009.  Castor Decl. ¶ 8 & Ex. 13; Hess Decl., Ex. 23 at 176:6-19.  FNB and TD conducted a non-judicial foreclosure of the property, which resulted in the transfer to FNB of the title to the property.  Hess Decl. ¶ 51 & Ex. 21.

Makreas now brings the following ten claims against Defendants: (1) breach of fiduciary duty against FNB and Brugioni; (2) wrongful foreclosure against FNB and TD; (3) forcible entry and detainer against FNB and Castor; (4) trespass against FNB; (5) wrongful eviction against FNB; (6) conversion against FNB; (7) violations of 42 U.S.C. § 1983 against FNB; (8) quiet title against all Defendants; (9) violations of California's Business and Professions Code Section 17200 against all Defendants; and (10) intentional infliction of emotional distress against FNB and TD.  Second Am. Comp. ("SAC"), ECF No. 107.

**B.      Foreclosure Proceedings**

The foreclosure on the property began on January 5, 2010, when Castor prepared and executed in the presence of a notary public a Substitution of Trustee substituting TD for LandAmerica Commonwealth as the new trustee under the Deed of Trust.  Castor Decl. ¶¶ 9-10 & Ex. 14, 15; Petrosian Decl., Ex. 10.  On the same day, Castor mailed the Substitution of Trustee and a request to prepare a Notice of Default to TD and authorized TD to prepare and record the Notice of Default.  Castor Decl. ¶¶ 11-12, Ex. 15, 16; Espinoza Decl. ¶¶ 2-4 & Ex. 1-3.

TD accepted the Substitution of Trustee.  It also prepared a Notice of Default, which it signed as an agent for FNB, not as the trustee, and recorded it on January 11, 2010.  Espinoza Decl. ¶¶ 5-7 & Ex. 4; Hess Decl., Ex. 23.  TD mailed the Notice of Default by certified mail and regular mail to Makreas at his home address as well as to the property.  Espinoza Decl. ¶ 7 & Ex. 5.  Makreas received a copy of the Notice of Default at his residence, which is located at 271 Tulare Drive, San Bruno, CA 94066.  Hess Decl., Ex. 23 at 26:20-30:5; 30:15-23.  In addition, on January 21, 2010, Makreas voluntarily obtained a copy of the Notice of Default from the County Recorder's office.  Id.

After TD mailed the Notice of Default to Makreas, TD mailed the Substitution of Trustee

_____

authenticity.  Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005)

United States District Court
Northern District of California

to Makreas on February 10, 2010, by certified and regular mail, and Makreas received it on February 12, 2010.  Espinoza Decl. ¶ 8, Ex. 6; Hess Decl., Ex. 23 at 28:9-12; 29:13-16; 83:11-17; 212:14-213:11.   TD recorded the Substitution of Trustee on February 11, 2012.  RNJ Ex. 34.

TD mailed a Notice of Trustee's Sale ("Notice of Sale") setting forth a sale date of May 7, 2010, by regular mail and certified mail to the property and to Makreas' residence on April 16, 2010.  Espinoza Decl. ¶ 9 & Ex. 7.  The Notice of Sale was posted on the property on April 17, 2010.  Espinoza Decl. ¶ 10 & Ex. 8.  The Notice of Sale was recorded on April 19, 2010.  Hess Decl., Ex. 23, Ex. 4 to Makreas Dep.  Makreas received the Notice of Sale in the mail and also obtained a copy from the County Recorder's office on April 19, 2010, which is the same day on which it was recorded.  Hess Decl., Ex. 23 at 28:13-16; 29:17-30:5; 214:9-12; 214:25-215:17 & Ex. 38 to Makreas Dep.

Makreas attended the trustee's sale on May 7, 2010; on that date, the sale was continued to May 10, 2010.  Hess Decl., Ex. 23 at 105:13-106:7.  The trustee's sale took place on May 10, 2010, and title transferred to FNB by trustee's deed on that date.  Hess Decl. ¶ 51 & Ex. 21.

C.     Post-Trustee's Sale

Castor left a note on the property shortly after the trustee's sale asking anyone who lived there to contact her.  Makreas Decl. ¶ 34 & Ex. C, Castor Dep., Ex. 12 at 82-86.  Makreas contacted Castor on May 12, 2010, and left a voicemail informing her that he was living at the property.  Makreas Decl. ¶ 38 & Ex. F.

FNB's contractor, Duke Wall, hired a locksmith, Greg Righetti, to change the locks on the property.  Castor Decl. ¶ 13.  Wall and Righetti went to the property on May 12, 2010, to change the locks.  Wall Decl. ¶ 4; Righetti Decl. ¶ 3.  When Righetti first opened the door to the property, an alarm went off.  Wall Decl. ¶ 5; Righetti Decl. ¶ 5.  Righetti turned off the alarm and continued to work on the locks.  A neighbor called the San Mateo County Sheriff's Department after hearing the alarm.  Hess Decl. Ex. 24 at 29:15-30:1.  When deputies from the Sheriff's Department arrived at the property, Wall and Righetti told the deputies that they were re-keying the locks on behalf of FNB, which owned the property.  Wall Decl. ¶ 7; Righetti Decl. ¶ 7; Hess Decl., Ex. 24 at 39:3-14.  A member of the Sheriff's Department called Castor to confirm Wall and Righetti's allegations

and Castor confirmed them.  Castor Decl. ¶ 14; Hess Decl., Ex. 24 at 13:12-14:18; 46:25-47:2; 47:13-22; 48:1-6; 81:19-23.  A member of the Sheriff's Department requested that FNB and Wall keep the Sheriff's Department informed about the work being done on the property.  Wall Decl. ¶ 8; Castor Decl. ¶ 14.

When the deputies left the property, Righetti continued to change the locks to the property and locked the property after he changed the locks.  Wall Decl. ¶ 8; Righetti Decl. ¶ 8.  No person from the Sheriff's Department helped Righetti change the locks or turn off the alarm to the property.  Righetti Decl. ¶¶ 10-11; Hess Decl., Ex. 25 at 74:25-78:24; 35:8-10; 43:12-15.  FNB, Wall, and Righetti had no further contact with the Sheriff's Department regarding the property except for Wall's updates to the Department regarding his work on the alarm, which he made at the Department's request.  Castor Decl. ¶ 17; Wall Decl. ¶ 10; Righetti Decl. ¶ 12.

On May 14, 2010, Makreas called the Sheriff's Department and summoned police officers to the property.  Makreas asked the officers to allow him into the property to change the locks but the officers did not allow him to do so.  Hess Decl.¶¶ 64-68 & Ex. 18, 21.  Makreas was not able to retrieve his personal belongings from the property, which he claims are worth approximately $5,000.  Makreas Decl. ¶ 51.

**D.     Procedural Background**

Before this action was reassigned, the Court granted in part and denied in part Makreas' motion for leave to amend his complaint to add a claim for intentional infliction of emotional distress and to dismiss his claim for violations of the Fair Debt Collection Practices Act.  ECF No. 106 at 2-3.  The Court, however, expressly denied Makreas' request for leave to amend his complaint to add new factual allegations "based on responses to discovery requests" on the ground that the addition of such facts would be prejudicial to Defendants.  Id. at 3.  Makreas filed a second amended complaint ("SAC") shortly after the Court issued this order.  ECF No. 107.

Fact and expert discovery has closed.  ECF No. 78.

**E.     Pending Motions**

Defendants FNB, Brugioni, and Castor move to strike the SAC on the ground that it contains new factual allegations that were disallowed by the Court.   ECF No. 117.

United States District Court
Northern District of California

Defendants FNB, Brugioni, and Castor move for partial summary judgment on Makreas' claims for (1) breach of fiduciary duty with respect to FNB and Brugioni; (2) wrongful foreclosure with respect to FNB; (3) forcible entry with respect to FNB and Castor; (4) trespass with respect to FNB; (5) violations of 42 U.S.C. Section 1983 with respect to FNB; (6) quiet title with respect to FNB, Castor, and Brugioni; (7) violations of California's Business and Professions Code Section 17200 with respect to Castor and Brugioni; (8) and intentional infliction of emotional distress with respect to FNB.  ECF No. 117.

Defendant TD moves for partial summary judgment on Makreas' claims against it for (1) wrongful foreclosure; (2) quiet title; (3) violations of California's Business and Professions Code Section 17200; and (4) intentional infliction of emotional distress.  ECF No. 118.

Finally, Makreas moves for partial summary judgment on his claims for (1) wrongful foreclosure as to FNB and TD; (2) conversion as to FNB; (3) forcible entry as to Castor and FNB; (4) trespass as to FNB; (5) wrongful eviction as to FNB; and (6) violations of California Business and Professions Code Section 17200 as to FNB and TD.  ECF No. 137.

At Makreas' request, the Court granted leave to Makreas to file a surreply for the exclusive purpose of addressing Defendants' evidentiary objections.  ECF No. 151.  The 22-page surreply that Makreas has filed contains at least nine pages of impermissible argument addressing the merits of Defendants' motions.  ECF No. 153.  Because the surreply fails to comply with this Court's order, the Court will not consider the surreply or any responses to the surreply for any purpose.

**F.     Jurisdiction**

The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1367.

## II.     LEGAL STANDARDS

**A.     Motions to Strike**

A district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).

**B.     Motions for Summary Judgment**

Summary judgment is proper when a "movant shows that there is no genuine dispute as to

1   any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

2   "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by"

3   citing to depositions, documents, affidavits, or other materials. Fed. R. Civ. P. 56(c)(1)(A).  A

4   party also may show that such materials "do not establish the absence or presence of a genuine

5   dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R.

6   Civ. P. 56(c)(1)(B).  An issue is "genuine" only if there is sufficient evidence for a reasonable

7   fact-finder to find for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-

8   49 (1986).  A fact is "material" if the fact may affect the outcome of the case.  Id. at 248.  "In

9   considering a motion for summary judgment, the court may not weigh the evidence or make

10   credibility determinations, and is required to draw all inferences in a light most favorable to the

11   non-moving party."  Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997).

12       Where the party moving for summary judgment would bear the burden of proof at trial,

13   that party bears the initial burden of producing evidence that would entitle it to a directed verdict if

14   uncontroverted at trial.  See C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc., 213 F.3d 474,

15   480 (9th Cir. 2000).  Where the party moving for summary judgment would not bear the burden of

16   proof at trial, that party bears the initial burden of either producing evidence that negates an

17   essential element of the non-moving party's claim, or showing that the non-moving party does not

18   have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.  If

19   the moving party satisfies its initial burden of production, then the non-moving party must produce

20   admissible evidence to show that a genuine issue of material fact exists.  See Nissan Fire &

21   Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102-03 (9th Cir. 2000).  The non-moving party

22   must "identify with reasonable particularity the evidence that precludes summary judgment."

23   Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996).  Indeed, it is not the duty of the district court

24   to "to scour the record in search of a genuine issue of triable fact."  Id.  "A mere scintilla of

25   evidence will not be sufficient to defeat a properly supported motion for summary judgment;

26   rather, the nonmoving party must introduce some significant probative evidence tending to support

27   the complaint."  Summers v. Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997) (citation

28   and internal quotation marks omitted).  If the non-moving party fails to make this showing, the

1   moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317,

2   323 (1986).

3                          **III.     MOTION TO STRIKE**

4          Defendants FNB, Brugioni, and Castor move to strike the SAC in its entirety on the ground

5   that it improperly contains new factual allegations that were expressly disallowed in the order

6   granting Makreas' request for leave to amend the complaint.  ECF No. 117.  Defendants also

7   request that, "as a sanction" for Makreas' conduct, the Court dismiss his claims for wrongful

8   foreclosure and quiet title.

9          Makreas contends that most of the amendments at issue are merely "typographical errors"

10  and "other minor points of clarification."  ECF No. 128 at 5-6.  Makreas admits that the SAC

11  included "two paragraphs pertaining to discovery responses and substantive new factual

12  allegations" but contends that the inclusion of such paragraphs was "inadvertent."  Id. at 6, 13.

13  Makreas attached to his opposition a new amended complaint that is identical to the first amended

14  complaint ("FAC") except for the addition of a claim for intentional infliction of emotional

15  distress and the removal of a claim for violations of the FDCPA, and he urges the Court to accept

16  this revised complaint as the new operative complaint.  See Goodell Decl., Ex. 2, ECF No. 124.

17         In their reply, Defendants do not object to the revised complaint.  Rather, they argue that

18  Makreas' arguments of inadvertence are "inconceivable."  ECF No. 139.

19         Upon review of the SAC and the FAC, it is clear that Makreas included factual allegations

20  in the SAC that were disallowed by the Court.  Compare, e.g., SAC ¶¶ 4, 15, 21, 23, 33, 36, 37,

21  62, 58-82 with FAC ¶¶ 4, 15, 21, 23, 33, 36, 37, 62, 58-82.  The Court, accordingly, will not

22  consider these impermissible allegations for any purpose and GRANTS Defendants' motion to

23  strike the SAC in its entirety.  The Court, however, declines Defendants' invitation to further

24  sanction Makreas and accepts Makreas' revised complaint, which is devoid of the factual

25  allegations at issue, as the new operative complaint ("revised complaint").  See Goodell Decl., Ex.

26  2, ECF No. 124.

27  //

28  //

United States District Court
Northern District of California

United States District Court
Northern District of California

## IV.     CROSS-MOTIONS FOR SUMMARY JUDGMENT

**A.     Wrongful Foreclosure ("Second Cause of Action")**

Makreas alleges that the foreclosure on the property is "invalid."  <u>See</u> Revised Compl. at 14-15.  Makreas advances the following theories in support of this claim: (1) TD backdated the Substitution of Trustee and therefore TD was not the lawful trustee at the time the Notice of Default was recorded; (2) Makreas did not receive a copy of the Notice of Default in the mail in violation of California Civil Code Section 2924; (3) TD never left a copy of the Notice of Trustee's Sale on the property in violation of California Civil Code Section 2924f; and (4) the Notice of Trustee's Sale was recorded 18 days before the sale, on April 19, 2010, and not at least 20 days before the sale.  <u>Id.</u>

A trustee's sale is void when the entity that performs the sale does not have the authority to do so under the deed of trust.  <u>See</u> <u>Dimock v. Emerald Properties LLC</u>, 81 Cal. App. 4th 868 (Cal. Ct. App. 2000).  A void trustee's sale is "is a complete nullity with no force or effect as opposed to one which may be set aside but only through the intervention of equity."  <u>Id.</u> at 876. When a trustee's sale is void, rather than simply voidable, tender is not required when attacking the deed because such an attack need not rely upon equity.  <u>Id.</u> at 879.

Defendants FNB and TD move for summary judgment on this claim.  Makreas filed a cross-motion for summary judgment.  Because Defendants have submitted affirmative evidence that negates each of the theories advanced by Makreas in support of his claim, and because Makreas has not shown that a genuine issue of material fact exists, Defendants' motion for summary judgment is GRANTED and Makreas' cross-motion is DENIED.  The Court now addresses each of Makreas' theories in turn.

**1.     Backdating**

Makreas argues that the Substitution of Trustee is invalid because it was recorded on February 11, 2010, which is a month after the Notice of Default was recorded on January 11, 2010.

California Civil Code Section 2934a(b) expressly permits a substitution of trustee to be recorded after a notice of default as long as (1) it is recorded before the notice of sale is recorded,

and (2) the beneficiary mails a copy of the substitution prior to the recording of the substitution. Here, Defendants have submitted evidence showing that they complied with both of these requirements.  The Substitution of Trustee was recorded on February 11, 2012, more than a month before the Notice of Sale was recorded on April 19, 2010.  TD mailed the Substitution of Trustee via certified mail and first class mail to the property and to Makreas' home address on February 10, 2010, a day before the Substitution was recorded.  Castor Decl. ¶ 8.

While Defendants have submitted evidence showing that they complied with Section 2934a(b), Makreas has not submitted any evidence to show that a genuine issue of material fact exists with respect to this theory.

### 2.      Mailing of the Notice of Default

Makreas argues that the trustee's sale is void because he never received a copy of the Notice of Default in the mail, which violates California Civil Code Section 2924.

Defendants have submitted evidence showing that the Notice of Default was mailed to Makreas via first class and certified mail on January 19, 2010, and that Makreas received it on February 12, 2010.  Espinoza Decl. ¶ 7, Ex. 5; Hess Decl., Ex. 23 at 28:9-12; 29:13-16; 83:11-17; 212:14-213:11 & Ex. 37 to Makreas Depo.  California Civil Code 2429 requires only that the Notice of Default be mailed, not that the Notice of Default actually be received.  See Winding v. Wells Fargo Bank, N.A., No. 11-cv-055 AWI SKO, 2011 WL 25525523, at *10 (E.D. Cal. June 27, 2011) ("At the outset it is important to note that the procedures set forth in sections 2429 through 2429h do not require that the trustor be provided actual notice.  All that is required is that notice be provided in accordance with the statute.").  This evidence satisfies Defendants' burden of production on this theory.

Because Makreas himself admitted during his deposition that he received the Notice of Default in the mail at his residence, and because he has submitted no evidence to show that the Notice of Default was not mailed in accordance with Section 2429, no genuine issue of material fact exists with respect to this theory.  See Ex. 23 to Hess Decl., 26:20-30:5; 30:15-23; Ex. 23 to Hess Decl. (Exhibit 2 from Makreas Depo.).

//

1

**3.      Notice of Sale on the Property**

2      Makreas claims that the trustee's sale is invalid because the Notice of Sale was not posted

3   on the property.

4      California Civil Code Section 2924f(b) requires that "notice of the sale thereof shall be

5   given by posting a written notice of the time of sale and of the street address and the specific place

6   at the street address where the sale will be held, and describing the property to be sold, at least 20

7   days before the date of sale in one public place in the city where the property is to be sold . . ."

8      Defendants have submitted evidence showing that TD hired a company to post the Notice

9   of Sale on the property.  Espinoza Decl. ¶ 10 & Ex. 8; see also Hess Decl., Ex. 23 at 98:14-100:11.

10   This evidence is sufficient for Defendants to meet their burden of production.

11      Makreas contends that he never saw the Notice of Sale posted on the property.  Makreas

12   Decl. ¶ 30.  The Court concludes that this is insufficient to establish that a genuine issue of

13   material fact exists with respect to this theory given that Makreas does not dispute the facts

14   submitted by Defendants showing that he had actual notice of the impending sale of the property.

15   See Hess Decl., Ex. 23 at 28:13-16; 29:17-30:5; 214:9-12; 214:25-215:17 & Ex. 38 to Makreas

16   Dep.

17

**4.      Recordation of Notice of Sale**

18      Makreas argues that the Notice of Sale was recorded 18 days before the sale and not 20

19   days before the sale as required by California Civil Code Section 2924f(b).

20      Defendants have submitted evidence showing that the Notice of Sale was recorded on

21   April 19, 2010, and that the sale took place on May 10, 2010, which is twenty days after the

22   Notice of Sale was recorded.  Hess Decl. ¶ 51 & Ex. 21; Hess Decl., Ex. 23, Ex. 4 to Makreas

23   Dep.  Defendants also have shown that the sale was postponed from May 7, 2010, to May 10,

24   2010, to ensure that Makreas would be given the required notice under Section 2924.  See Hess

25   Decl., Ex. 23 at 105:13-106:7.  This evidence satisfies Defendants' burden of production.

26   Makreas has submitted no evidence to show that a genuine issue of material fact exists with

27   respect to this theory.

28   //

United States District Court
Northern District of California

5.    **Makreas' New Theories**

a.    **Trustee's Address**

In his opposition, for the first time in this action, Makreas contends that the Substitution of Trustee violates the terms of the Deed of Trust and is therefore void.  Opp'n at 14, ECF No. 128.  Makreas argues that the Deed of Trust requires that the address of any successor trustee be included in any Substitution of Trustee, but the Substitution of Trustee here does not contain TD's address.  Makreas notes that the Deed of Trust provides that "[t]his procedure for substitution shall govern to the exclusion of all other provisions for substitution."  Opp'n at 9.

While "parties to a deed of trust may agree to a form of substitution of trustee other than that provided in section 2934a," any such agreement does not preclude the parties from effectuating the substitution of trustee via California Civil Code Section 2934a(a)(1).  See Jones v. First Am. Title Ins. Co., 107 Cal. App. 4th 381, 390, 131 Cal. Rptr. 2d 859 (2003).  Section 2934a provides that where its requirements are fulfilled, "the substitution shall be effective notwithstanding any contrary provision in any trust deed executed on or after January 1, 1968 . . . ."  Cal. Civ. Code § 2934a(a)(1); see also 4 Harry D. Miller and Marvin B. Starr, California Real Estate § 10:9 (3d ed. 2009) ("As a general rule, when the substitution is made prior to the recordation of a notice of default and the deed of trust provides a procedure for substitution that is different from the statutory procedure, either method of substitution is acceptable.  The statutory method can be followed, and the substitution is effective even though it does not comply with the contractual requirements.").

Because Makreas does not cite to any authority that establishes that the parties to a deed of trust may not effectuate a substitution of trustee via Section 2934 when they have agreed to an alternative form of substitution, and because Makreas does not dispute that the Substitution here met the requirements of Section 2934, this theory fails.

b.    **Notarization**

Also for the first time, Makreas argues in his opposition that "[t]here is a genuine issue of material fact over whether or not the Substitution of Trustee was not complete at the time of signing by the document's signatory, FNB Vice President Kathy Castor."  Opp'n at 15.  Makreas

11

1    contends that a TD employee testified that "she has seen people enter TDSC's name and address

2    in the body notarized documents," and that "the 'file front' of the Plaintiff's foreclosure file states

3    that TD should be sure to add our address in the body of doc/ret. addr."  Opp'n at 16 (citing

4    testimony of Crystal Espinoza).  Makreas also notes that another TD employee testified that "TD

5    sometimes types its name onto a document when a customer directs them to" and that "TD would

6    ask the customer if they wished the customer to have information typed onto a document such as

7    this even after it is notarized."  Opp'n at 16 (citing testimony of Patricia Randall).  Makreas argues

8    that this evidence raises a genuine issue of material fact with respect to the validity of the

9    Substitution of Trustee, because the act of notarizing an incomplete document is illegal under

10   California Government Code Section 8205.

11        California Civil Code Section 2934 requires that the beneficiary named in the deed of trust

12   or her successors in interest execute and acknowledge any substitution of trustee.  See Cal. Civ.

13   Code § 2934a(a)(1).  Under California law, "a notary public may not accept any acknowledgment

14   or proof of any instrument that is incomplete."  Cal. Gov't Code § 8205.  It follows that, if a

15   substitution of trustee is not acknowledged in accordance with California Government Code

16   Section 8205, then the substitution would not comply with the acknowledgment requirement of

17   Section 2934, which in turn would render it void.

18        While Makreas is correct that the validity of the Substitution would be in question if the

19   Substitution was not acknowledged in accordance with Section 8205, the evidence that Makreas

20   has presented, even when interpreted in the light most favorable to Makreas, is insufficient for a

21   reasonable juror to find that the Substitution at issue was not properly acknowledged.

22        First, Makreas presents no direct evidence showing that information was added to the

23   Substitution after it was notarized or that it was incomplete at the time it was notarized.  On the

24   other hand, Castor has submitted a declaration stating under penalty of perjury that she personally

25   prepared the Substitution in its entirety before signing it and having it notarized.  Castor Decl. ¶¶

26   9-10.  Castor's declaration satisfies Defendants' burden of production.

27        Second, though Makreas submitted hundreds of pages of documents to support his cross-

28   motion, his citations to those documents are either incorrect or not sufficiently specific to enable

United States District Court
Northern District of California

12

the Court to find the evidence he cites in his opposition.  See, e.g., Opp'n at 16 ("See Excerpts of Depositions of Crystal Espinoza, Patricia Randall, Patrick Dobiez, Janina Hoak, Kathy Castor, and Randy Brugioni.").  It is not the duty of the court to "to scour the record in search of a genuine issue of triable fact."  Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996).

The evidence that the Court has reviewed despite Makreas' inadequate citations, all of which is circumstantial, does not establish that a genuine issue of material fact exists with respect to the notarization of the Substitution.  For example, though Makreas contends that the Substitution of Trustee file contained an instruction on its front page telling TD employees to "be sure to add our address in the body of doc/ret. addr," the cited deposition testimony does not establish that the Substitution had such an instruction.  Even assuming that it did, Makreas has argued repeatedly in his opposition and motion for summary judgment that one of the grounds for invalidating the foreclosure is that the Substitution did not contain TD's address.  Goodell Decl., Ex. 7 at 40.  The lack of the address on the Substitution despite the existence of the instruction on its front page would not lead a reasonable juror to conclude that it is more probable than not that the Substitution was altered after it was notarized; instead, it would likely lead a reasonable juror to conclude that it is more probable than not that the Substitution was not altered.

At best, the deposition excerpts submitted by Makreas show that, on some occasions, TD's employees add information to foreclosure-related documents after those documents are notarized. This evidence is insufficient for a jury to find that any such additions were made to the Substitution at issue here.  See Anderson, 477 U.S. at 249-50 (A court may not grant summary judgment if "the evidence is merely colorable . . .").  Indeed, Makreas would not be able to meet his burden of proof at trial based on this evidence alone.  See id. at 254 ("[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden.  This conclusion is mandated by the nature of this determination. The question here is whether a jury could reasonably find either that the plaintiff proved his case by the quality and quantity of evidence required by the governing law or that he did not.").  Because Makreas has not submitted any other evidence showing that the Substitution here was improperly acknowledged, the Court concludes that Makreas has not established that a genuine

13

1   issue of material fact exists with respect to this theory.

2       In sum, because Defendants have submitted sufficient evidence to establish that Makreas

3   cannot meet his burden to show that the trustee's sale was void under any of his theories, and

4   because Makreas has not submitted sufficient evidence to show that genuine issue of material fact

5   exists with respect to any of his theories, Defendants' motion for summary judgment on Makreas'

6   wrongful foreclosure claim is GRANTED, and Makreas' cross-motion is DENIED.

7   **B.      Quiet Title ("Eighth Cause of Action")**

8       Makreas alleges that he retains legal title to the property because the foreclosure sale was

9   invalid.  See Revised Compl. at 19-20.

10      Because Defendants have prevailed as a matter of law with respect to Makreas' claim for

11  wrongful foreclosure, Makreas' quiet title claim fails as a matter of law because Makreas does not

12  have title to the property.  See Cal. Code Civ. P. § 761.020(b) (quiet title complaint must allege

13  "[t]he title of the plaintiff as to which a determination under this chapter is sought and the basis of

14  the title.").

15      Accordingly, Defendants' motion for summary judgment on this claim is GRANTED.

16  **C.      Forcible Entry and Detainer ("Third Cause of Action")**

17      Makreas alleges that FNB and Castor "broke into" the property, changed the locks, and

18  deprived him of possession of the property, and that such acts prevented him from "being able to

19  challenge the validity of the non-judicial foreclosure sale through an unlawful detainer trial."  See

20  Revised Compl. at 16.

21      A person who enters real property by breaking open doors, windows, or other parts of a

22  house, or by any kind of violence or circumstance of terror, is guilty of statutory forcible entry.

23  See Cal. Code Civ. P. § 1159.  A person who enters real property by "force, or by menaces and

24  threats of violence, unlawfully holds and keeps the possession of any real property, whether the

25  same was acquired peaceably or otherwise," is guilty of statutory forcible detainer.  See Cal. Code

26  Civ. P. § 1160.  The exclusive remedy for claims for forcible entry or detainer is the re-possession

27  of the property.  See Cal. Code Civ. P. § 1174.

28      To prevail on a claim for forcible entry or detainer, which is a summary proceeding, a

United States District Court
Northern District of California

14

plaintiff must comply with the provisions of California's Code of Civil Procedure Section 1167, which requires the plaintiff to serve a court summons specifying a five-date return date and a trial to be held within twenty days.  See Cal. Code Civ. P. §§ 1167, 1170.5; see also Jordan v. Talbot, 55 Cal. 2d 597, 604 (1961) ("The action of forcible entry and detainer is a summary proceeding to recover possession of premises forcibly or unlawfully detained.") (internal citation omitted).

Here, Makreas has not alleged or submitted evidence showing that he complied with the requirements of Section 1167 or any of the other requirements for instigating a summary proceeding under California law.

Instead, he argues that he is entitled to prevail on this claim because "a non-violent lock change can support a statutory claim for forcible entry" and because a claim for forcible entry is not precluded by a defendant's acquisition of title to the property through a foreclosure.  Opp'n at 14.  While the two cases that Makreas cites in his opposition in support of this argument do establish that a statutory forceful entry claim can lie when the defendant has changed the locks of the property without using violence or when the defendant has acquired title to the property via a trustee's sale, neither of these cases excuse a plaintiff's failure to comply with the requirements of the California Code of Civil Procedure for bringing a summary proceeding.  See Karp v. Margolis, 159 Cal. App. 2d (Cal. Ct. App. 1958) (holding that a statutory forcible entry claim can be brought against purchasers of property at trustee's sale); Karp v. Margolis, 159 Cal. App. 2d 69 (Cal. Ct. App. 1958) (holding that "a non-violent lock change can support a statutory claim for forcible entry").

Makreas also cites Dalusio v. Boone in his opposition for the proposition that a party that forcibly enters onto a property of which the plaintiff has peaceable possession but no actual title is liable for any actual damages sustained by the plaintiff.  Opp'n at 18.  Dalusio is inapposite.  The court in Dalusio expressly distinguished between a statutory forcible entry claim brought under the California Code of Civil Procedure to recover possession of a property, such as the claim at issue here, and non-statutory forcible entry claims that can be brought in tort for damages arising out of a person's unauthorized entry into a property.  See, e.g., Dalusio v. Boone, 71 Cal. 2d 484, 500 (Cal. 1969) ("We hold in the instant case that quite *apart from any remedy available in a summary*

15

1    *action of forcible entry and detainer*, a person in peaceable possession of real property may

2    recover, *in an action sounding in tort*, damages for injuries to his person and goods caused by the

3    forcible entry of one who is, or claims to be, the lawful owner or possessor and that the forcibly

4    entering defendant's title or right of possession is no defense to such action.") (emphasis added).

5        Accordingly, Defendants' motion for summary judgment on this claim is GRANTED, and

6    Makreas' cross-motion is DENIED.

7    **D.    Trespass ("Fourth Cause of Action")**

8        Makreas alleges that, after the trustee's sale, he was in "quiet and peaceable possession" of

9    the property, and that FNB trespassed when it entered into the property to change the locks.  See

10   Revised Compl. at 17.

11       Makreas' legal theory is supported by California law, which permits claims for non-

12   statutory forcible entry.  In Allen v. McMillion, a California Court of Appeal held that a plaintiff

13   who had peaceful possession but not title to a property "should be entitled to an award of at least

14   nominal damages" upon "proof of the elements of a trespass, i.e., a nonstatutory action for forcible

15   entry."  82 Cal. App. 3d 211, 219 (Cal. Ct. App. 1978).  Allen makes clear that lawful possession

16   is not necessary to bring a claim for trespass.  Id. ("If the forcible intruder were the owner of the

17   property, the party in peaceable possession would be entitled to an award of at least nominal

18   damages, *notwithstanding that the plaintiff's possession was wrongful*.") (citations omitted)

19   (emphasis added).

20       Here, Makreas has submitted evidence showing that he was in peaceful possession of the

21   property at the time FNB entered it to change the locks without Makreas' authorization.  Makreas

22   Decl. ¶¶ 33-35, 38-39.[2]  Specifically, Makreas has shown that he had a reasonably significant

23   amount of personal property at the property, that he notified Castor of his plans to move into the

24   property while he contested the legality of the foreclosure proceedings, and that FNB changed the

25   locks of the property without his authorization.  Id.  This is sufficient to meet his burden of

26   production.

27   _____

28   [2] The Court does not consider Exhibits E or F to Makreas' declaration or any references to such
     exhibits, as the exhibits contain inadmissible hearsay or lack foundation.

United States District Court
Northern District of California

1       Because FNB and Castro have not submitted evidence showing that a genuine issue of

2 material fact exists with respect to this claim, Makreas' cross-motion on this claim is GRANTED

3 and Defendants' motion on this claim is DENIED.

4 **E.     Wrongful Eviction ("Fifth Cause of Action")**

5       Makreas alleges that FNB "wrongfully evicted" him from his home with the intent of

6 depriving him of the opportunity to challenge FNB's claim to title and possession of the property.

7 Revised Compl. at 18.

8       A plaintiff claiming wrongful eviction may seek statutory remedies under the forcible entry

9 and detainer statutes, or tort remedies under the non-statutory forcible entry theory discussed in

10 the previous section. See Allen, 82 Cal. App. 3d at 219 (holding that a plaintiff who had peaceful

11 possession but not title to a property "should be entitled to an award of at least nominal damages"

12 upon "proof of the elements of a trespass, i.e., a nonstatutory action for forcible entry").

13       Makreas moves for summary judgment on this claim based on the same facts and legal

14 arguments he made with respect to his claims for forcible entry, forcible detainer, and trespass.

15 Because Makreas has prevailed as a matter of law on his trespass claim, he also prevails on his

16 wrongful eviction claim under Allen.  Accordingly, his cross-motion for summary judgment on

17 this claim is GRANTED and Defendants' motion is DENIED.

18 **F.     Conversion ("Sixth Cause of Action")**

19       Makreas alleges that, after FNB gained entry to the property and locked him out, FNB did

20 not return the personal property that he left at the property or permit him to re-enter the property to

21 recover such property.  Revised Compl. at 18.  Makreas alleges that the personal property at issue

22 "was worth approximately $5,000."  Id.

23       To prevail on a conversion claim, a plaintiff must show must show "ownership or right to

24 possession of property, wrongful disposition of the property right and damages."  Kremen v.

25 Cohen, 337 F.3d 1024, 1029 (9th Cir. 2003).  A property right exists if the following three

26 elements are satisfied: "First, there must be an interest capable of precise definition; second, it

27 must be capable of exclusive possession or control; and third, the putative owner must have

28 established a legitimate claim to exclusivity."  Id. at 1030.

United States District Court
Northern District of California

United States District Court
Northern District of California

1       Makreas has submitted evidence showing that he left a significant number of his personal

2 items at the property, that FNB gained possession of such items when it entered the property and

3 changed the locks, and that FNB never allowed him to return to the property to recover the items.

4 Makreas Decl. ¶¶ 33-35, 38-39.  Makreas also has filed a declaration in which he states that the

5 property at issue included "construction tools, a radio, cleaning supplies, tiles, ladders, hangars,

6 and other items."  Makreas Decl. ¶ 35, ECF No. 135.  Makreas attached to his declaration an

7 "Affidavit of Truth" that itemizes the property at issue, which he signed under penalty of perjury.

8 Id., Ex. D.  This evidence satisfies Makreas' burden of production.

9       In opposition to Makreas' motion, FNB does not contend that Makreas did not leave any

10 personal items at the property.  Rather, FNB argues the "Affidavit of Truth" itemizing the items at

11 issue is based on hearsay and is thus inadmissible.[3]  FNB also argues that the doctrine of estoppel

12 precludes Makreas from recovering on his claim of conversion because he did not ask FNB for his

13 personal items immediately after the foreclosure.

14       The Court concludes that FNB has submitted evidence to show that a genuine issue of

15 material fact exists with respect to this claim.  Specifically, FNB has submitted a declaration by

16 Castor, who inspected the property after the foreclosure, stating that she saw some but not all of

17 the items listed in Makreas' Affidavit of Truth at the property.  Castor Decl. ¶¶ 14-15.

18       The Court also concludes that Makreas' conversion claim is not subject to estoppel,

19 because, based on Castor's declaration, it is clear that FNB was aware of that some of Makreas'

20 personal items were left on the property and that Makreas had the capacity to assert a conversion

21 claim against it.  See Varela v. Wells Fargo Bank, 15 Cal. App. 3d 741, 748 (Cal. Ct. App. 1971)

22 (holding that the party asserting estoppel "must be ignorant of the true facts" and that such

23 ignorance cannot be established when the party asserting estoppel "was in a position to know the

24 true state of facts").

25       Accordingly, Makreas' motion for summary judgment on this claim is DENIED.

26 //

27

28 _____

[3] The Court concludes that the statements in Exhibit D are based on Makreas' own personal
knowledge and are not hearsay.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### G.     Breach of Fiduciary Duty ("First Cause of Action")

Makreas alleges that FNB and Brugioni breached their fiduciary duties to him by telling him at which price to sell the property and by discussing Makreas' financial affairs "with the real estate agent they approved of." See Revised Compl. at 13-14.  Makreas alleges that FNB and Brugioni "exercised dominion and control over [Makreas]" by urging him to sell the property for $1.4 million instead of its fair market value, which was closer to $1.63 million according to appraisals. Id. at 14.  Makreas further alleges that his real estate agent originally listed the property at $1.599 million, but within twelve hours of listing it, the real estate agent called Makreas and told him that "Brugioni wanted the property listed for $1.4 million." Id.  Makreas did not agree to reduce the price at this time, but eventually did so agree to lower the price to $1.489 million because "the real estate agent persisted." Id.  Makreas claims that he would have been able to sell the property "had it not been for" FNB and Brugioni's "interference." Id.

Under California law, "[B]anks ordinarily have limited duties to borrowers.  Absent special circumstances, a loan does not establish a fiduciary relationship between a commercial bank and its debtor." Das v. Bank of Am., N.A., 186 Cal. App. 4th 727, 740 (Cal. Ct. App. 2010).  A lender, however, "owes a fiduciary duty to a borrower when it excessively controls or dominates the borrower." Pension Trust Fund for Operating Engineers v. Fed. Ins. Co., 307 F.3d 944, 955 (9th Cir. 2002) (citations omitted).  For example, a borrower exercises excessive control over a borrower where the lender "dominate[s] the borrower to the extent that the borrower has lost its separate identity." Kim v. Sumitomo Bank, 17 Cal. App. 4th 974, 980 (Cal. Ct. App. 1993) (citation omitted).

FNB and Brugioni move for summary judgment on this claim on the ground that Makreas cannot meet his burden to shown that a fiduciary duty exists between him and FNB.  Defendants contend that, despite Makreas' allegations that they exercised "dominion and control" over Makreas in setting the property's sale price, Makreas stated during his deposition that he himself set the initial price for the house at a point higher than the one for which Brugioni expressed a preference during their discussions, and that it was his decision to reduce the price after the property had been on the market for thirty days.  Hess Decl. ¶¶ 9-10 & Ex. 18, 21, 23 at 165:21-

1   166:5; 167:23-168:10; 174:12-22; 175:11-16.  This evidence satisfies Defendants' burden of

2   production.

3          Makreas argues in response to Defendants' motion that "a construction lender owes duties

4   to defaulting borrowers over and beyond what a traditional lender does, particularly when things

5   have gone awry."  Opp'n at 22.  Makreas cites Jolley v. Chase Home Fin., LLC, 213 Cal. App. 4th

6   872 (Cal. Ct. App. 2013) in support of this argument.  Jolley, however, is inapposite, as it holds

7   that a lender owes a borrower a duty of care in connection with disputes arising out of the

8   performance of a construction loan agreement.  Id. at 901.  Fiduciary duties are not at issue in

9   Jolley.

10         Makreas further contends that Brugioni and FNB owed him fiduciary duties because they

11  "dictated the price to Plaintiff's real estate agent."  Opp'n at 22.  In support of this argument,

12  Makreas cites to the entirety of his own declaration and Brugioni's deposition without specifying

13  which portions of those documents are relevant to the Court's inquiry.  Id. ("See Plaintiff's

14  Declaration and Brugioni Deposition.").  A non-movant's failure to identify facts with specificity

15  is sufficient grounds for granting a motion for summary judgment.  See Keenan v. Allan, 91 F.3d

16  1275, 1279 (9th Cir. 1996) (noting that the non-moving party must "identify with reasonable

17  particularity the evidence that precludes summary judgment" and that it is not the duty of the

18  district court to "to scour the record in search of a genuine issue of triable fact").  Because

19  Makreas fails to cite to specific facts showing that genuine issue of material fact exists with

20  respect to this claim, Defendants' motion for summary judgment on this claim is GRANTED.

21  **H.      Claim Under 42 U.S.C. Section 1983 ("Seventh Cause of Action")**

22         Makreas alleges that FNB deprived him of his rights under the Fourteenth Amendment by

23  using "police assistance" to "achieve their unlawful seizure of the property."  See Revised Compl.

24  at 18-19.  Makreas alleges that FNB called the San Mateo County's Sheriff's Office and

25  "informed them that they would be changing the locks, and asked them to keep [Makreas] out of

26  the property."  Id. at 19.  Makreas called the Sheriff's Office and "asked them to come to the

27  property" on May 14, 2010.  Id.  When the police arrived, they "informed [Makreas] that he could

28  not re-change the locks or enter the property because [FNB] was now the owner of the property."

United States District Court
Northern District of California

1   Id.

2       "The ultimate issue in determining whether a person is subject to suit under § 1983 is the

3   same question posed in cases arising under the Fourteenth Amendment: is the alleged

4   infringement of federal rights fairly attributable to the [government]?"  Sutton v. Providence St.

5   Joseph Med. Ctr., 192 F.3d 826, 835 (9th Cir. 1999).  Government action exists if the following

6   two factors are satisfied: "First, the deprivation must result from a governmental policy.  In other

7   words, the deprivation must be caused by the exercise of some right or privilege created by the

8   [government] or a rule of conduct imposed by the [government]."  Id. (internal citations and

9   quotation marks omitted).  "Second, the party charged with the deprivation must be a person who

10   may fairly be said to be a [governmental] actor."  Id.  "In order for private conduct to constitute

11   governmental action, 'something more' must be present."  Id. (citation omitted).  "Courts have

12   used four different factors or tests to identify what constitutes 'something more': (1) public

13   function, (2) joint action, (3) governmental compulsion or coercion, and (4) governmental nexus."

14   Id. at 835-36.

15       FNB moves for summary judgment on this claim on the ground that the undisputed facts

16   show that FNB did not act under color of state law.  The facts cited by FNB show that the

17   Sheriff's Department did not assist in changing the locks or disabling the alarm system on the

18   property and that FNB, Wall, and Righetti never requested the Sheriff's Department or any person

19   affiliated with the Department to take any actions with regard to the property.  Castor Decl. ¶¶ 17-

20   26; Wall Decl. ¶¶ 10-19; Righetti Decl. ¶¶ 10-22; Hess Decl., Ex. 24 at 74:24-78:24.  The Court

21   concludes that this evidence is sufficient for FNB to meet its burden of production.

22       In his opposition, Makreas argues that a genuine issue of material fact exists with respect

23   to whether FNB acted under color of state law because FNB "repeatedly contacted the San Mateo

24   County Sheriff's Office."  Opp'n at 17-18, ECF No. 128.  Makreas cites "Goodell Declaration,

25   Exhibit 22, pgs. 20-35" in support of his argument without specifying which of the fifteen pages

26   he cites are relevant to the Court's inquiry or why the information in these pages supports his

27   contention.  Exhibit 22 is a "Transcript of Audio Recording" for the dates of May 12, 2010, and

28   May 14, 2010."  The pages cited by Makreas contain a transcription of (1) a conversation between

an emergency dispatcher, an unidentified speaker, and Nick Makreas that took place on May 14; it is unclear from the pages cited who the unidentified speaker is or who called the dispatcher; (2) a conversation between Duke Wall and a dispatcher on May 14; Wall called to inform the police department at the department's previous request that he would be working on the alarm at the property that day; the dispatcher asks Wall to call back that day with an update; (3) a conversation between Makreas and a dispatcher on May 14; Makreas informs the department that someone changed the locks on his property; (4) a conversation between Wall and a dispatcher; Wall called back at dispatcher's request and dispatcher asks Wall to call back the next day when the alarm work is completed; (5) a conversation between Wall and a dispatcher on May 15; again, Wall called back at dispatcher's request before starting work on the alarm and, yet again, the dispatcher asks Wall to call back that same day when the work is completed. Goodell Decl., Ex. 22 at 22-35, ECF No. 127.

This evidence shows that the calls made by Wall, who works for FNB, were made exclusively at the request of the Sheriff's Department. Nothing about the conversation suggests that FNB asked the Sheriff's Department to participate in any way with their repossession of the property, or that the Sheriff's Department was involved in any activity related to the foreclosure of Makreas' home. The Court therefore concludes that the evidence presented by Makreas, even when construed in the light most favorable to him, is insufficient for a reasonable juror to find that it is more probable than not that FNB acted under color of state law, as such a finding would require evidence showing that FNB "deliberately used the police to carry out the challenged eviction." See Howerton v. Gabica, 708 F.2d 380, 384 (9th Cir. 1983) (holding that a private party acted under color of state law in effectuating an eviction because the party "repeatedly requested aid by the police to effect the eviction, and the police intervened at every step").

Accordingly, Defendants' motion for summary judgment on this claim is GRANTED.

## I.    Intentional Infliction of Emotional Distress ("Tenth Cause of Action")

Makreas alleges that FNB and TD "engaged in extreme and outrageous conduct" by foreclosing on the property even though the foreclosure was "invalid." See Revised Compl. at 22-23. Makreas further alleges that he suffered "substantial emotional anguish" when he lost the

1   property.  Id. at 23.

2          To prevail on a claim for intentional infliction of emotional distress, a plaintiff must show

3   (1) extreme and outrageous conduct by the defendant either with intent or reckless disregard; (2)

4   severe and extreme emotional distress suffered by the plaintiff; and (3) actual and proximate

5   causation.  Christensen v. Superior Court, 54 Cal.3d 868, 903 (Cal. 1991). To be outrageous,

6   conduct "must be so extreme as to exceed all bounds of that usually tolerated in a civilized

7   community."  Davidson v. City of Westminster, 32 Cal.3d 197, 209 (Cal. 1982).

8          Defendants FNB and TD move for summary judgment on this claim on the basis that

9   Makreas cannot show that the foreclosure on the property was outrageous conduct.  In his

10   opposition, Makreas argues that FNB's entry into the property without his authorization and its

11   changing of the locks constitutes actionable outrageous conduct.

12          While the act of foreclosing on a plaintiff's home does not by itself constitute outrageous

13   conduct, a wrongful eviction following a foreclosure can constitute outrageous conduct, even if no

14   threats or abusive conduct was involved in the eviction.  See Davenport v. Litton Loan Servicing,

15   LP, 725 F. Supp. 2d 862, 884 (N.D. Cal. 2010) (holding that the act of foreclosing on a home

16   "falls shy of 'outrageous,' however wrenching the effects on the borrower"); see also Spinks v.

17   Equity Residential Briarwood Apartments, 171 Cal. App. 4th 1004, 1045 (Cal. Ct. App. 2009).  In

18   Spinks, the California Court of Appeals held that changing the locks on a plaintiff's home without

19   her consent to force her to leave was "unlawful" and possibly outrageous because the defendant

20   acted deliberately and intentionally despite knowing that the plaintiff is in a vulnerable state.  Id.

21          Here, based on Makreas' opposition, his intentional infliction of emotional distress claim is

22   premised on FNB's changing of the locks.  As discussed above, Makreas has submitted sufficient

23   evidence to prevail on his claim for wrongful eviction and trespass, which establishes that FNB's

24   deliberate and unauthorized entry into the property to change the locks was unlawful.  Makreas

25   also submitted a declaration in which he states that being locked out of his home caused him to

26   suffer loss of sleep, stress, fatigue, and other ailments.  Makreas Decl. ¶ 55. The Court concludes

27   that this evidence, while insufficient for Makreas to prevail as a matter of law, is sufficient to

28   show that a genuine issue of material fact exists with respect to this claim.  Accordingly, FNB's

United States District Court
Northern District of California

1   motion for summary judgment on this claim DENIED.

2        Because this claim is premised on FNB's unauthorized entry into the property, and there

3   are no facts showing that TD had any involvement in such entry, TD's motion for summary

4   judgment on this claim is GRANTED.

5   **J.      Violations of California's Business and Professions Code Section 17200**

6   **        ("Ninth Cause of Action")**

7        Makreas alleges that each of the defendants to this action violated Section 17200 by "not

8   complying with the laws pertaining to California non-judicial foreclosure sales" and failing to

9   "comply with the laws pertaining to debt collection."  See Revised Compl. at 21-22.   In his

10  motion for summary judgment, Makreas makes clear that his claim for violations of Section 17200

11  is premised on the allegedly unlawful trustee's sale of the property.  See Mot. at 12 ("Plaintiff is

12  entitled to judgment pursuant to all three prongs of section 17200 by virtue of the wrongful

13  foreclosure proceedings.").

14       Because this cause of action is premised on the alleged invalidity of the trustee's sale, and

15  because Defendants have prevailed as a matter of law on Makreas' claim for wrongful foreclosure,

16  Defendants' motion for summary judgment on this claim is GRANTED and Makreas' cross-

17  motion is DENIED.[4]

18  //

19  //

20  //

21  //

22  //

23  //

24  //

25

26  _____

27  [4] To the extent that Makreas seeks to assert claims under the UCL based on his claims of wrongful eviction, trespass, and conversion, such claims fail as a matter of law because "[t]he UCL limits the remedies available for UCL violations to restitution and injunctive relief," and here, neither of

28  those remedies is available with respect to these claims.  Madrid v. Perot Sys. Corp., 130 Cal. App. 4th 440, 452 (Cal. Ct. App. 2005)

United States District Court
Northern District of California

United States District Court
Northern District of California

# IV.    CONCLUSION

In sum, the Court rules as follows:

(1)    Defendants' motion to strike the SAC is GRANTED.  The operative complaint is the revised complaint, Goodell Decl., Ex. 2, ECF No. 124.

(2)    Defendant FNB is entitled to judgment as a matter of law with respect to Makreas' claims for wrongful foreclosure, quiet title, forcible entry and detainer, breach of fiduciary duty, violations of 42 U.S.C. § 1983, and violations of California's Business and Professions Code Section 17200.

(3)    Defendant Castor is entitled to judgment as a matter of law with respect to Makreas' claims for forcible entry and detainer, quiet title, and violations of California's Business and Professions Code Section 17200.

(4)    Defendant Brugioni is entitled to judgment as a matter of law with respect to Makreas' claims for breach of fiduciary duty, quiet title, and violations of California's Business and Professions Code Section 17200.

(5)    Defendant TD is entitled to judgment as a matter of law with respect to Makreas' claims for wrongful foreclosure, quiet title, violations of California's Business and Professions Code Section 17200, and intentional infliction of emotional distress.

(6)    Makreas is entitled to judgment as a matter of law with respect to his claims for trespass and wrongful eviction as to FNB.

(7)    The only surviving claims in this action are Makreas' claims for conversion and intentional infliction of emotional distress as to FNB.

**IT IS SO ORDERED**.

Dated: June 4, 2013

_____
JON S. TIGAR
United States District Judge